[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Date of Sentence: August 24, 1995 Date of Application: August 25, 1995 Date Application Filed: September 5, 1995 Date of Decision: March 28, 2000.
Application for review of sentence imposed by the Superior Court, Judicial District of Hartford.
Docket Number CR 94-459816. CT Page 4929
Hope Seeley, Defense Council, for Petitioner.
Victor Carlucci, Assistant State's Attorney, for the State.
BY THE DIVISION:
The petitioner, then 24 years of age, was convicted following a trial by jury, of murder (§ 53a-54a(a) as an accessory (§ 53a-8); assault 2nd degree (§ 53a-60 (a)(2); and conspiracy to commit murder (§ 53a-48a and 53a-54 (a).
He was sentenced to a term of 55 years for the murder, 5 years consecutive for the assault and 20 years consecutive for the conspiracy. The total effective sentence was 80 years.
The factual basis for the conviction is reported in State v.Taylor, 239 Conn. 481, 484-487 (1996), as follows:
During the evening of August 28, 1992, and the early morning of August 29, 1992, the defendant attended a party with members of the Latin Kings on Seymour Street in Hartford. At about 1 a.m., Felix Baez, another guest at the party, asked the defendant to drive him on the defendant's motorcycle to the Cambrense Cafè, a bar and restaurant located on New Park Avenue in Hartford. Helder Aguiar, the sixteen year old son of the owner, and Fernando Aguiar, the owner's brother, were working at the cafè that night. Sometime before 1:30 a.m. on August 29, 1992, Baez and the defendant arrived at the cafe on the defendant's motorcycle. Almost immediately after they entered the cafè, Baez began arguing with another patron. Fernando, who was tending bar, asked both Baez and the defendant to leave. The defendant complied, but Baez did not. Fernando then grabbed Baez by the shirt collar and pushed him out the door. The defendant watched but did not take part in the struggle between Baez and Fernando, which continued outside the cafe and ended when Baez was thrown to the sidewalk. The defendant pointed his right index finger at Fernando and said "wait a minute." As he stood up, Baez warned "we'll be back." Baez tried to mount the defendant's motorcycle, but in so doing, he knocked the motorcycle to the ground and broke a handlebar. CT Page 4930
The defendant then drove Baez on his motorcycle to Baez' apartment on Madison Street in Hartford. Olga Sorra, a fifteen year old who was baby-sifting Baez' children at his apartment, joined the defendant on his motorcycle after he had dropped off Baez. Sorra and the defendant returned to the party. When they arrived at the party, the defendant asked someone where the "coronas"[1] were, and the defendant was told that they were in the back room. The defendant entered the room and when he came out, he told Sorra that he was leaving but that he would be back. Soon thereafter, the defendant left the party.
Sometime after 2 a.m., Helder Aguiar stepped outside of the Cambrense Cafè to help Fernando Aguiar look for keys he had lost during the scuffle with Baez. As he stood outside, Helder noticed two people carrying handguns, whose faces were wrapped with T-shirts covering all but their eyes, moving up the south side of the cafe toward Fernando. As Helder yelled to Fernando to warn him of the approaching danger, one of the assailants put his revolver against Fernando's head and the other assailant fired a semiautomatic pistol at Helder and struck him with two bullets. Helder observed that the person who shot him had the same build as the defendant and wore exactly the same clothing from the waist down that the defendant had worn one hour earlier at the cafè. Before he lost consciousness, Helder saw both armed men firing bullets at Fernando as he lay on the sidewalk.
Fitzalbert Williams, a state prisoner on weekend furlough, lived in a third floor apartment at 6 New Park Avenue within view of the cafè. Williams was lying awake in bed sometime after 2 a.m. on August 29, 1992, when he heard two gunshots. Williams went to his window, he opened it, and, as he looked out the widow, saw the defendant with a pistol in his hand. Williams testified that nothing obstructed his view, that the lighting was "pretty bright" and that his eyesight was "very good." Williams stated that he saw a "half-front view" of the defendant from the nose back to the right side, and that the defendant was not then wearing anything that covered his face. Williams further testified that he saw "sparks," and then observed the defendant turn in his direction before running away. As the defendant began to run away, Williams saw a second armed person appear and fire gunshots at a person lying on the sidewalk. After firing the shots, the other assailant ran in the same direction as the defendant. The defendant helped the other assailant over a fence, and they both disappeared out of Williams' sight.
At approximately 2:22 a.m. on the morning of August 29, 1992, Hartford police officers Antonio Champion and Carlos Rosario were at CT Page 4931 the intersection of Park Street and Sisson Avenue when they heard gunshots coming from the direction of New Park Avenue. Both officers responded to the sound of gunfire and ran to the intersection of Park Street and New Park Avenue. Champion saw Fernando Aguiar lying on the ground, having been shot several times in the face and upper part of his body. Both Fernando and Helder Aguiar were taken to Hartford Hospital where Fernando was pronounced dead. The autopsy on Fernando revealed the multiple gunshot wounds to the head and body were the cause of his death. Helder was treated for two gunshot wounds and released.
When Sorra saw the defendant return to the Latin Kings party at approximately 2:30 a.m., the defendant was not riding his motorcycle. Rather, he was a passenger in a Ford Bronco driven by another member of the Latin Kings. Subsequently, Sorra and the defendant were driven to his apartment in Manchester, and Sorra spent the remainder of the night with him. Later that morning, a person who had been at the party the night before came to the defendant's apartment and told the defendant that he should leave town. The defendant filled a suitcase with clothes and left the apartment.
Petitioner's counsel argues that his consecutive sentence of 20 years on the conspiracy to commit murder is disproportionately high. Essentially, she argues that when defendants are convicted of both conspiracy and the principal crime, they are more likely to receive concurrent sentences on those counts. Even assuming that to be true, it is clear that conspiracy is a separate crime and it is not double jeopardy to impose consecutive sentences if the facts and circumstances of the crime make such a sentence appropriate. Indeed this Division has affirmed sentences substantially longer than 60 years in murder cases with additional counts present. In the matter of State v. Diaz the defendant received a total effective sentence of 105 years for murder, 2 counts of attempted murder and carrying a pistol without a permit. While the court did impose a concurrent sentence on a conspiracy count, it fashioned a sentence totaling 105 years, which was not inappropriate in that case.
Even if, in the majority of cases where there is a conspiracy and a principal count, concurrent sentences are imposed, there will be by definition a minority of cases where it is appropriate to impose consecutive terms.
Having carefully reviewed the file, arguments and submissions of counsel we conclude that under the facts and circumstances of this case, the sentence was neither unreasonable nor disproportionate. CT Page 4932
The sentencing court pointed out that the chance for rehabilitation was "next to nothing" and the Court was concerned about the conspiracy charge, wherein the petitioner went to the Latin King corona for permission to commit the cold blooded murder of a family man who left a wife and two children ages twenty and sixteen, and the shooting of the decedent's sixteen year old nephew. The petitioner was a regional commander of the Latin Kings whose duty it was to order "missions" to be carried out by other gang members.
The pre-sentence report properly characterized this crime as a deliberate, vicious and unprovoked attack which left an innocent man dead and his nephew seriously injured, both physically and psychologically. He was described by his parole officer as "very dangerous" and the report suggested a sentence which "will insure that he will spend the rest of his life in prison."
That the petitioner was convicted as an accessory does not warrant mitigation. The testimony was that he was a shooter. The other gunman apparently was never identified or arrested.
When reviewing this case pursuant to the provisions of P.B. §43-28, it is clear that the offense is callously heinous, that the protection of the public interest is properly a paramount consideration (and probably the paramount consideration) for the longest possible period of time.
Given these considerations, the Division concludes that the sentence should not be modified. Accordingly, it is affirmed.
KLACZAK, O'KEEFE and IANNOTTI J.s, participated in this decision.